Marc E. Elias*
Elisabeth C. Frost*
John M. Geise*
Daniela Lorenzo*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, DC 20002
Phone: (202) 968-4513
Facsimile: (202) 968-4498
melias@elias.law
efrost@elias.law
jgeise@elias.law
dlorenzo@elias.law

Roy Herrera (Bar No. 032901)
Daniel A. Arellano (Bar No. 032304)
Jillian L. Andrews (Bar No. 034611)
**HERRERA ARELLANO LLP**
530 East McDowell Road, Suite 107-150
Phoenix, Arizona 85004-1500
Telephone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com
jillian@ha-firm.com

*Attorneys for Plaintiffs*
**Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Mi Familia Vota and Voto Latino,

Plaintiffs,

v.

Katie Hobbs, in her official capacity as Arizona Secretary of State; Mark Brnovich, in his official capacity as Arizona Attorney General; and the County Recorder Defendants, Apache County Recorder Larry Noble; Cochise County Recorder David W. Stevens; Coconino County Recorder Patty Hansen; Gila County

Case No. 2:22-cv-00509-SRB

**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Recorder Sadie Jo Bingham; Graham County Recorder Wendy John; Greenlee County Recorder Sharie Milheiro; Le Paz County Recorder Richard Garcia; Maricopa County Recorder Stephen Richer; Mohave County Recorder Kristi Blair; Navajo County Recorder Michael Sample; Pima County Recorder Gabriella Cázares-Kelly; Pinal County Recorder Virginia Ross; Santa Cruz County Recorder Suzanne Sainz; Yavapai County Recorder Leslie M. Hoffman; and Yuma County Recorder Robyn S. Pouquette, in their official capacities,

Defendants.

Plaintiffs Mi Familia Vota and Voto Latino, by and through their undersigned attorneys, file this Second Amended Complaint for Injunctive and Declaratory Relief against Defendants Katie Hobbs, in her official capacity as the Secretary of State of Arizona, Mark Brnovich, in his official capacity as the Attorney General of Arizona, and the above-captioned County Recorder Defendants, each named in their official capacities. In support, Plaintiffs allege the following:

## NATURE OF THE CASE

1. This is an action brought under the U.S. Constitution to safeguard the fundamental rights of hundreds of thousands of Arizonans, including the right to vote and the state-protected right to vote early by mail, which are subject to due process protections. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). In this action, Plaintiffs challenge Arizona's latest effort to undermine that most precious right: the recently enacted H.B. 2492, which severely burdens the right to vote and, in many cases, will deny that right entirely, disenfranchising eligible, lawful voters in violation of the First and Fourteenth Amendments, the National Voter Registration Act of 1993 ("NVRA"), and the "Materiality Provision" of Section 101 of the Civil Rights Act of 1964.

2. Arizona has a long and complex history of applying different registration and voting requirements to different voters, which has caused portions of its law to be held in violation of federal law and has required the State to enter into an ongoing consent decree. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013); Consent Decree at 7-16, *LULAC v. Reagan*, No. 2:17-cv-04102-DGC (D. Ariz. June 18, 2018), ECF No. 37 ("Consent Decree"). The result is a byzantine system in which Arizona has three classes of voters: (1) those who registered pre-2005 and did not have to show documentary proof of citizenship (because Arizona did not yet require it), who can vote in all elections; (2) those who registered post-2005 using the federal form required by the NVRA (the "Federal Form") and did not show documentary proof of citizenship, who can vote only in federal elections; and (3) those who registered post-2005 and showed adequate proof of

citizenship, who can vote in all elections. All of these voters are entitled to vote in elections for which they are qualified by mail, a right which Arizona has provided to all voters for any reason since 1991. *See* A.R.S. § 16-541. Further, under the ongoing consent decree, the state must (1) treat all registrants the same regardless of whether they use the state form or Federal Form, registering all voters for federal elections regardless of provided evidence of citizenship; and (2) check the motor vehicles database for citizenship documentation before limiting voters to federal-only elections. *See* Consent Decree at 7-16.

3. H.B. 2492 (the "Proof of Citizenship Restriction"), which was signed into law on March 30, 2022, adds another confusing, discriminatory, unnecessary, and unconstitutional impediment to this morass. Among other things, the Proof of Citizenship Restriction will (1) prohibit new registrants using the Federal Form from voting in presidential elections or voting by mail in elections for any office unless they provide additional documentation, (2) prohibit currently registered voters who registered using the Federal Form without proof of citizenship from voting in presidential elections or voting by mail for any office, and (3) prohibit long-registered Arizona voters who never had to provide proof of citizenship—estimated to be close to 200,000 voters[1]—from voting in presidential elections, unless they locate and present additional documentation. The law provides no details concerning how long-registered voters will be notified that they must provide new documents, or how they will be given an opportunity to do so. The new law also requires the Attorney General to investigate and potentially prosecute voters who registered without providing what the statute deems satisfactory proof of citizenship.[2] H.B.

[1] *See* Laurie Roberts, *Republicans want HOW MANY Arizonans to prove they have a right to vote?*, Ariz. Republic (Mar. 28, 2022, 9:12 AM), https://www.azcentral.com/story/opinion/op-ed/laurieroberts/2022/03/28/arizona-voters-may-soon-prove-right-vote-citizenship/7192260001/.

[2] Under A.R.S. § 16-166, satisfactory proof of citizenship includes showing any of these: (1) the number of the applicant's driver license or nonoperating identification license issued after October 1, 1996 by the department of transportation or the equivalent governmental agency of another state within the United States if the agency indicates on the applicant's driver license or nonoperating identification license that the person has provided satisfactory proof of United States citizenship; (2) a legible photocopy of the applicant's birth certificate that verifies citizenship to the satisfaction of the county recorder; (3) a legible photocopy of pertinent pages of the applicant's United States passport identifying the applicant and the applicant's passport

2492 becomes effective on December 31, 2022.[3]

4. The Proof of Citizenship Restriction continues a baseless assault on Arizona's elections based on a conspiracy theory that non-citizens are voting, despite a persistent lack of credible evidence to support such claims. It is the newest in a series of cynical and bad faith attempts to use these politically motivated and false allegations to limit access to voting by eligible, lawful citizens. And the new law's limitations on early voting are particularly pernicious given the prevalence of early voting by mail in Arizona. In 2020, a record-setting 88 percent of voters used Arizona's early voting by mail system to cast their ballots. But, even before the pandemic, early voting was the most common form of voting in the state. In 2016, over 2 million Arizona voters—or about 75 percent of those who participated in the election—used early voting. Even in 2008, more than a million voters—or close to half of those participating—used early voting. And, as more voters have turned to early voting by mail, Arizona's election administrators have responded by diverting their resources to support mail-in voting, anticipating that the overwhelming majority of Arizona voters will exercise their right to vote by mail. As a result, in-person voting facilities and opportunities have dramatically decreased.

5. In other words, Arizona's voting system has been oriented toward supporting and facilitating early mail voters for decades. It was well tested and well established. There is no evidence that it was undermined or even vulnerable to abuse or fraud. Quite to the contrary, both Governor Doug Ducey and Secretary Hobbs have repeatedly assured the public and the nation that false claims about the legitimacy of Arizona's 2020 election are to be rejected, that the election was secure and fraud-free, and that the results should be trusted. As Governor Ducey emphasized in response to attacks on the integrity of the 2020

number or presentation to the county recorder of the applicant's United States passport; (4) a presentation to the county recorder of the applicant's United States naturalization documents or the number of the certificate of naturalization. If only the number of the certificate of naturalization is provided, the applicant shall not be included in the registration rolls until the number of the certificate of naturalization is verified with the United States immigration and naturalization service by the county recorder; (5) other documents or methods of proof that are established pursuant to the immigration reform and control act of 1986; and (6) the applicant's bureau of Indian affairs card number, tribal treaty card number or tribal enrollment number.

[3] *See* S.B. 1638 § 4, 55th Leg., 2d Reg. Sess. (Ariz. 2022).

election: "We've been doing early voting since 1992," and claims about problems with the system or the election are unfounded.[4]

6. Despite these assurances, multiple lawsuits and contests brought by the Republican Party, former President Donald Trump's campaign, and their supporters have sought to cast doubt on the outcome of the 2020 election. Arizona's state and federal courts responded by rejecting those suits and repudiated their champions for their striking lack of evidence. For example, in a case brought by the Arizona Republican Party to challenge the legitimacy of Maricopa County's audit, the Superior Court ordered the party to pay attorney's fees to the Secretary of State under A.R.S. § 12-349 because the lawsuit was "groundless," brought in "bad faith," and served only to "cast false shadows on the election's legitimacy." Order at 9-10, *Ariz. Republican Party v. Fontes*, No. CV 2020-014553 (Ariz. Super. Ct. Mar. 12, 2021).

7. The same false narratives sowed the groundwork for the Proof of Citizenship Restriction, and now, as a result, tens of thousands of Arizonans will be forced to jump through unnecessary hoops to access the mail voting system upon which they have come to rely, and to vote in presidential elections whether by mail or in person. Some of those lawful, eligible Arizona voters will be unable to clear the Restriction's hurdles. As manifested by state officials' full-throated defense of Arizona's election system in the immediate aftermath of the November 2020 election, as well as multiple court decisions related to the same, there are no state interests, much less compelling ones, to justify the new imposition of these unjustifiable and disparate burdens. There is no evidence that any of Arizona's voting methods are beset by fraud, and no credible evidence that non-citizens are attempting to overcome (much less actually overcoming) the numerous safeguards Arizona already had in place to limit voting in Arizona to United States citizens. The Proof of Citizenship Restriction is an entirely illegitimate and unconstitutional roadblock erected in the path of lawful, eligible voters. For these reasons and those detailed below, Plaintiffs respectfully request a declaration that the Proof of Citizenship Restriction is unconstitutional and violates the NVRA and the Civil Rights Act of 1964, and an order

[4] @DougDucey, Twitter (Nov. 30, 2020, 9:48 PM) https://twitter.com/dougducey/status/1333603891863191552? ref_src=twsrc%5Etfw.

enjoining its enforcement.

## JURISDICTION AND VENUE

8. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 and 52 U.S.C. §§ 20510 and 10101(d) to redress the deprivation, under the color of state law, of their rights under the First and Fourteenth Amendments to the U.S. Constitution, the NVRA, and the Civil Rights Act of 1964.

9. Plaintiffs sent Secretary Hobbs detailed written notices of these violations of the NVRA on April 7, 2022, and she failed to correct the violations alleged herein within 90 days. Plaintiffs therefore have a private right of action under 52 U.S.C. § 20510(b) to enforce the NVRA. Exhibit A contains the original notice provided to Secretary Hobbs and all correspondence between the parties thereafter.

10. This Court has subject matter jurisdiction to hear Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1357.

11. This Court has jurisdiction over the Secretary of State, as she is sued in her official capacity as an elected official in Arizona. Further, the Secretary works and resides in the State of Arizona.

12. This Court has jurisdiction over the Attorney General, as he is sued in his official capacity as an elected official in Arizona. Further, the Attorney General works and resides in the State of Arizona.

13. This Court has jurisdiction over the County Recorder Defendants, as they are sued in their official capacities as elected officials in Arizona, and they work or reside in the State of Arizona.

14. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and in this division.

15. This Court has the authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and 52 U.S.C. § 20510(b). Further, this Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure.

## PARTIES

16. Plaintiff Mi Familia Vota ("MFV") is a national, non-profit civic engagement organization with a mission of uniting Latino, immigrant, and allied communities to promote social and economic justice through increased civic participation by encouraging leadership development, citizenship, and issue organizing. MFV encourages non-partisan voter registration and voter participation and has challenged voter suppression around the nation. *See, e.g.*, *Mi Familia Vota v. Hobbs*, No: 2:21-cv-01423-DWL (D. Ariz. filed Aug. 17, 2021); *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195 (W.D. Tex. 2020). It has operations in six states, including Arizona, where it is headquartered. More than 14,000 Arizonans follow and engage with MFV via email and/or MFV's social media platforms.

17. In advance of the 2020 election, MFV organized voter registration drives and conducted get-out-the-vote activities. MFV helped countless Arizonans register to vote using a Federal Form and helped countless Arizonans register to vote by mail. MFV also conducted voter education campaigns and provided other voter assistance, including driving voters to polling locations.

18. MFV plans to organize the same activities for future elections. As a result of the Proof of Citizenship Restriction, however, MFV must divert money, personnel, time, and resources away from other programming in order to dedicate more resources toward efforts to ensure that voters can navigate the restrictions imposed by the Proof of Citizenship Restriction. Additionally, MFV plans to hire additional staff to help educate voters about the Proof of Citizenship Restriction and is considering developing public service announcements in Spanish-language media concerning the changes. MFV will also expend resources confirming that voters who previously registered to vote either (1) pre-2005 or (2) post-2005 using the Federal Form, are not prohibited from voting early by mail or in presidential elections due to the Proof of Citizenship Restriction.

19. Plaintiff Voto Latino is a 501(c)(4) nonprofit, social welfare organization that engages, educates, and empowers Latinx communities across the United States, working to ensure that Latinx voters are enfranchised and included in the democratic process. In furtherance of its mission, Voto Latino expends significant resources to register and mobilize thousands of Latinx voters each election cycle, including the nearly 1.2 million

eligible Latinx voters in Arizona.[5] Voto Latino considers eligible Latinx voters in Arizona to be the core of its constituency.

20. Voto Latino mobilizes Latinx voters in Arizona through statewide voter registration initiatives, as well as peer-to-peer and digital voter education and get-out-the-vote campaigns. From 2017 to 2020, Voto Latino registered over 50,000 new voters in Arizona. Of those registered voters, countless individuals registered using the Federal Form and registered to vote by mail.

21. For future elections, Voto Latino anticipates making expenditures in the millions of dollars to educate, register, mobilize, and turn out Latinx voters across the United States, including in Arizona. Voto Latino, however, must divert money, personnel, time, and resources away from its other registration initiatives toward efforts to ensure that Latinx voters in Arizona can navigate the restrictions imposed by the Proof of Citizenship Restriction. This will include expending staff time and money seeking to acquire data on individuals who will lose their right to vote by mail and vote in presidential elections due to the Proof of Citizenship Restriction and working to ensure that voters who can no longer vote by mail due to the Proof of Citizenship Restriction are aware of this limitation and are still able to exercise the franchise.

22. Defendant Katie Hobbs is the Secretary of State of Arizona and is the Chief Elections Officer for Arizona. Ariz. Const. art. V, § 9; A.R.S. § 16-142. The Secretary of State is "responsible for coordination of state responsibilities under the national voter registration act of 1993." A.R.S. § 16-142(A)(1). Further, as Arizona's Chief Elections Officer, the Secretary is responsible for carrying out the state's election laws and overseeing the voting process—and is empowered with broad authority to carry out that responsibility. As such, the Secretary has the authority to promulgate rules and procedures for elections, including rules and regulations pertaining to voter registration. A.R.S. §§ 16-

[5] According to the most recent data from the Pew Research Center's analysis of 2018 American Community Survey data (IPUMS) and Census Data 2018 ACS 1-year estimates (tables B05003 and B05003I), the number of Latinos eligible to vote in Arizona in 2018 was approximately 1,188,000. *See* Pew Research Center, *Mapping the Latino Electorate*, https://www.pewresearch.org/hispanic/interactives/mapping-the-latino-electorate/iframe/ (last visited July 14, 2022).

452, 16-168(J). Moreover, the Secretary is charged with enforcing the new statutory provisions at issue here. *Id.* § 16-143. The Secretary is sued in her official capacity for actions taken under color of state law.

23. Defendant Mark Brnovich is the Attorney General of Arizona and the State's chief legal officer. *Id.* § 41-192. The Attorney General is authorized to enforce Arizona's election laws in "any election for state office, members of the legislature, justices of the supreme court, judges of the court of appeals or statewide initiative or referendum . . . through civil and criminal actions." *Id.* § 16-1021. Moreover, the Attorney General is charged with enforcing the new statutory provisions at issue here. *Id.* § 16-143. The Attorney General is sued in his official capacity for actions taken under color of state law.

24. The Proof of Citizenship Restriction makes county recorders responsible for implementing and enforcing the statutory provisions at issue here. Amongst other responsibilities, county recorders are charged with verifying a voter's citizenship status, rejecting voter registration applications if the county recorder cannot confirm an applicant's citizenship status, forwarding applications to the Attorney General for investigation, and canceling a voter's registration based on citizenship. *See generally* H.B. 2492. The County Recorder Defendants listed below are sued in their official capacities for actions taken under color of state law.

25. Defendant Larry Noble is the Apache County Recorder.

26. Defendant David W. Stevens is the Cochise County.

27. Defendant Patty Hansen is the Coconino County Recorder.

28. Defendant Sadie Jo Bingham is the Gila County Recorder.

29. Defendant Wendy John is the Graham County Recorder.

30. Defendant Sharie Milheiro is the Greenlee County.

31. Defendant Richard Garcia is the La Paz County Recorder.

32. Defendant Stephen Richer is the Maricopa County Recorder.

33. Defendant Kristi Blair is the Mohave County Recorder.

34. Defendant Michael Sample is the Navajo County Recorder.

35. Defendant Gabriella Cázares-Kelly is the Pima County Recorder.

36. Defendant Virginia Ross is the Pinal County Recorder.

37. Defendant Suzanne Sainz is the Santa Cruz County Recorder.

38. Defendant Leslie M. Hoffman is the Yavapai County Recorder.

39. Defendant Robyn S. Pouquette is the Yuma County Recorder.

## STATEMENT OF FACTS

### A. Arizona has a long and tortured history of changing voter registration systems.

40. Despite the lack of any credible fraud allegations, there has been a decades-long effort in Arizona—as the state's electorate has become more diverse—to restrict the franchise and impose unjustifiable impediments to the right to vote. These changes have led to disenfranchisement, multiple conflicting systems, and repeated litigation.

41. As is particularly relevant here, in 2004 Arizona voters adopted Proposition 200, a ballot initiative purportedly designed "to combat voter fraud by requiring voters to present proof of citizenship when they register to vote and to present identification when they vote on election day." *Purcell v. Gonzalez*, 549 U.S. 1, 2 (2006) (*per curiam*). Proposition 200 amended the state's election code to require county recorders to "reject any application for registration that is not accompanied by satisfactory evidence of United States citizenship." A.R.S. § 16–166(F). This requirement was seemingly in direct conflict with the NVRA, which requires states to "accept and use" a standard federal registration form for voter registration (the "Federal Form") that does not require applicants to provide documentary proof of citizenship. 52 U.S.C. § 20505. And, in fact, the Supreme Court held in 2013 that the NVRA precluded Arizona from requiring applicants who used the NVRA's Federal Form to submit information beyond that required by the form itself. *Inter Tribal Council of Ariz.*, 570 U.S. at 15 ("We conclude that . . . a state-imposed requirement of evidence of citizenship not required by the Federal Form is 'inconsistent with' the NVRA's mandate that States 'accept and use' the Federal Form." (quoting *Ex parte Siebold*, 100 U.S. 371, 397 (1880))).

42. Nonetheless, the Supreme Court's ruling in *Inter Tribal Council* left open the possibility of imposing different requirements for voters in state and local elections than federal elections. Then-Attorney General Thomas Horne issued an Opinion on October 7, 2013 stating that such a system was required to comply with both state law and the NVRA,

*see* Ariz. Att'y Gen. Op. No. I13-011 (Oct. 7, 2013), available at https://www.azag.gov/sites/default/files/2018-06/I13-011.pdf (last visited Mar. 30, 2022), and then-Secretary of State Ken Bennett subsequently implemented Arizona's bifurcated voter registration system, which has been in place ever since.

43. Under this bifurcated system, Arizona has three classes of voters: (1) those who registered pre-2005 and did not have to show proof of citizenship, who have been permitted to vote in all elections; (2) those who registered post-2005 using the Federal Form and did not show evidence of citizenship, who have been permitted to vote only in federal elections; and (3) those who registered post-2005 and showed adequate proof of citizenship, who have been permitted to vote in all elections. Prior to the Proof of Citizenship Restriction, all of these voters were entitled to vote in elections for which they were qualified by mail, a right which Arizona has provided to all voters for any reason since 1991. *See* A.R.S. § 16-541.

44. This bifurcated system has already led to disenfranchisement and confusion, resulting in further litigation. For example, prior to 2018, voters who used Arizona's state registration form and provided no evidence of citizenship were not registered to vote in *any* elections, while voters who undertook the same process but used the Federal Form to register were registered to vote in federal elections. *See generally* Consent Decree. What's more, because Arizona has documentary proof of citizenship for some citizens from their driver's license application, some citizens who register to vote with the Federal Form have already provided proof of citizenship in a means that is easily verifiable, and the state can easily search for such voters' documentation and allow them to vote in all elections. *Id.*

45. Due to these issues, in 2017, the League of United Latin American Citizens Arizona and the Arizona Students' Association sued then-Secretary of State Michele Reagan and then-Maricopa County Recorder Adrian Fontes, alleging that the state's dual voter registration policies constituted an undue burden on the right to vote and that the state's failure to register voters who used the state form without providing proof of citizenship in federal elections had disenfranchised "at least 26,000 otherwise eligible voters . . . in Maricopa County alone[.]" Compl. ¶¶ 39, 77-88, *LULAC v. Reagan*, No. 2:17-cv-04102-DGC (Nov. 7, 2017), ECF No. 1. The parties entered into a consent decree to

end the litigation, which required (1) Arizona to treat all registrants the same regardless of whether they use the state form or Federal Form, registering all voters for federal elections; and (2) state and county officials to check the motor vehicles database for citizenship documentation before limiting voters to federal-only elections. *See* Consent Decree at 7-16.

46. As it presently stands, hundreds of thousands of Arizonans are registered to vote without having provided documentary proof of citizenship to the state. This includes 31,000 voters in Arizona who are registered using only the Federal Form.[6] Additionally, Arizona did not require proof of citizenship to obtain a driver's license until 1996, and the Arizona Department of Transportation's Motor Vehicle Division has reported that at least 192,000 Arizonans who have one of those pre-1996 licenses have not re-registered or provided proof of citizenship.[7] Accordingly, there are at least 192,000 voters who are seemingly entitled to vote in *all* elections in Arizona despite never providing proof of citizenship.

**B. Arizona voters rely on the state's early voting system.**

47. Early mail voting is immensely popular in Arizona, and for years, the vast majority of voters have relied on it to cast their ballot. Since 1991, all eligible voters in Arizona have been able to vote early by mail without a reason or "excuse" for doing so. *See* A.R.S. § 16-541. Reliance on early mail voting has steadily grown ever since. In 2008, over one million Arizonans, or around half of the voters who participated in the election, used early mail voting. In 2016, over two million voters, or about 75 percent of voters who participated in the election, used early mail voting. And in 2020, nearly three million voters, or about 88 percent of those voters who participated in the election, used early mail voting.

48. The ever-increasing reliance on early voting by mail in Arizona has led to an

---

[6] *See* Howard Fischer, *Some Arizona voters could face citizenship check*, Ariz. Daily Star (Mar. 27, 2022), https://tucson.com/news/local/subscriber/some-arizona-voters-could-face-citizenship-check/article_72ec0350-ac76-11ec-a0d7-2fbe0dcb9094.html?utm_source=ourcommunitynow&utm_medium=web.
[7] *Id.*

election-administration system heavily oriented toward mail voting, with a corresponding decrease in the availability of in-person voting options. In fact, one study found that the state has had the "most widespread reduction" in polling places of any state over the last decade—the state now has 320 fewer polling places than it did in 2012.[8] While Arizona's inducement of voters to use early voting by mail has helped to make voting generally more accessible in the state and has helped counties preserve resources, fewer polling places translates to more difficulties for those who must vote in person. This is especially true in rural places and on the state's tribal lands, where voters must travel long distances to vote in person and where public transportation is often not available.

**C. The 2020 election in Arizona was secure and accurate.**

49. Despite the significant challenges presented by the COVID-19 pandemic, Arizona voters turned out in record-setting numbers in 2020. More than 3.4 million of the state's 4.3 million voters, or 79.9 percent, cast a ballot. This compares to 74 percent in 2016, 74.2 percent in 2012, 74.3 percent in 2008, 77.7 percent in 2004, and 71.8 percent in 2000.[9]

50. The security and accuracy of the 2020 election results have been confirmed and re-confirmed by county and state election officials, as well as the courts.

51. County election officials have confirmed and scrutinized the results. For example, after the election, pursuant to A.R.S. § 16-602, ten of the state's fifteen counties performed a hand count of sample ballots to test the equipment, each confirming the election's initial results.

52. In Arizona's largest county, Clint Hickman, the chair of the Maricopa County Board of Supervisors, confirmed that "there is no evidence of fraud or misconduct or

---

[8] *See* The Leadership Conference Education Fund, *Democracy Diverted: Polling Place Closures and the Right to Vote* 17 (Sept. 2019), http://civilrightsdocs.info/pdf/reports/Democracy-Diverted.pdf.

[9] Voter Registration and Historical Election Data, Ariz. Sec'y of State, https://azsos.gov/elections/voter-registration-historical-election-data (last visited Sept. 13, 2021).

malfunction" in a letter that was sent to all Maricopa County voters.[10]

53. In February 2021, the Maricopa County Elections Department further confirmed its results, hiring two auditing firms to conduct audits of the county's tabulation system and equipment, which found no evidence of inaccuracies or improprieties.[11]

54. State officials have likewise confirmed the results of the 2020 election and have publicly and definitively declared their accuracy. Arizona law requires the Secretary, in the Governor's presence, to certify the statewide canvass. *See* A.R.S. § 16-648. On November 30, 2020, Secretary Hobbs, in the presence of Governor Ducey, did so. The Governor himself further confirmed and defended the accuracy of the results through his social media accounts and in a meeting at the White House with former President Trump.

55. Additionally, multiple lawsuits seeking to overturn the results of the election only served to further confirm that the election was secure.

56. For example, in *Bowyer v. Ducey*, various Republican officials filed a lawsuit seeking decertification of the election based on, among other things, allegations of improprieties in signature matching. The court dismissed the suit on multiple grounds, including a lack of any evidence. 506 F. Supp. 3d 699, 722 (D. Ariz. Dec. 9, 2020).

57. Similarly, in *Ward v. Jackson*, the Arizona Supreme Court concluded that the Republican challenger failed to "establish any degree of fraud or a sufficient error rate that would undermine the certainty of the election results[.]" No. CV-20-0343-AP/EL, 2020 WL 8617817, at *2 (Ariz. Dec. 8, 2020), *cert. denied*, No. 20-809, 2021 WL 666437 (U.S. Feb. 22, 2021).

58. Nevertheless, fact-free conspiracy theories and efforts to undermine confidence in the elections process have continued to percolate. In particular, these same baseless and repeatedly disproven "concerns" have continued to animate claims of fraud

---

[10] Letter from Clint Hickman to Maricopa County Voters, Maricopa Cnty. Bd. of Supervisors (Nov. 17, 2020), https://www.maricopa.gov/DocumentCenter/View/64676/PR69-11-17-20-Letter-to-Voters (last visited Mar. 30, 2022).

[11] Auditing Elections Equipment in Maricopa County, Maricopa Cnty. Gov't (Feb. 23, 2021), https://maricopacountyaz.medium.com/auditing-elections-equipment-in-maricopa-county-3955445c1712 (last visited Mar. 30, 2022).

pushed by many Republican officials in the state.

**D. H.B. 2492 is merely the latest in a string of baseless allegations of fraud that have led to a host of pernicious efforts in Arizona to target early voting by mail.**

59. When the 2021 legislative session began, Republicans in the Legislature moved quickly to introduce several bills to severely restrict access to the franchise in Arizona, relying on continuing evidence-free allegations of fraud in Arizona elections. This resulted in the passage of two bills in the 2021 legislative session that restrict the franchise: (1) S.B. 1003, which prohibits voters whose early voting by mail ballots are flagged for rejection based on a missing signature from curing that deficiency after 7 p.m. on Election Day; and (2) S.B. 1485, which fundamentally alters the state's immensely popular Permanent Early Voting List—which the new legislation rebrands as the Active Early Voting List—by requiring election officials to purge from the list any voter who has not voted an early ballot "for two consecutive election cycles." Both bills are aimed squarely at suppressing voter participation using Arizona's early voting regime.

60. Legislation is not the only means of this ongoing assault on early voting by mail. The Arizona Republican Party recently initiated litigation in the Arizona Supreme Court seeking an order declaring that *all* no-excuse early voting by mail in Arizona, as well as the use of drop boxes to return ballots, violate the Arizona Constitution. *See* Compl., *Ariz. Republican Party v. Hobbs*, No. CV-22-0048-SA (Ariz. Feb. 25, 2022). After the Arizona Supreme Court declined to take jurisdiction, the Arizona Republican Party filed a similar lawsuit in the Superior Court of the State of Arizona in and for the Mohave County, *Arizona Republican Party, et al. v. Hobbs et al.*, No. CV-2022-00594 (Ariz. Super. Ct. June 28, 2022).

61. The Proof of Citizenship Restriction continues this anti-voter trend, marrying it to Arizona's nearly twenty-year effort to introduce roadblocks into its voter registration regime. The result is a law which has a host of problematic provisions, including:

- requiring that as a qualification of registration an individual "ha[ve] provided satisfactory evidence of citizenship" and revising the definition of a "qualified elector" in Arizona to include that such person must have

"provided satisfactory evidence of citizenship." (Sections 1, 2);[12]

- prohibiting any registered voter (other than voters protected by the Uniformed and Overseas Citizens Absentee Voting Act) who has not provided adequate proof of citizenship—including potentially all voters registered before 2005 and all federal-only voters—from voting in presidential elections until they provide adequate proof of citizenship, with no provisions for how such voters should or will receive notice of any such prohibition (Section 5);
- prohibiting all voters in Arizona who can currently vote only in federal elections from voting early by mail in any elections (Section 5);
- prohibiting Arizonans who seek to register without adequate proof of citizenship from registering to vote in presidential elections or from voting early by mail (Section 4);
- requiring county recorders to reject the application of any voter who submits a state registration form without proof of citizenship (Section 4);
- requiring county recorders to research the citizenship of any voter who submits a Federal Form, prohibit any such voter from voting in *any* election if the county recorder cannot determine they are a United States citizen, and refer any such voter's registration to the county attorney and Attorney General for investigation if the county recorder determines they are not a United States citizen (Section 4);
- requiring the Secretary of State and county recorders to provide a list to the Attorney General of any voters who are registered without satisfactory proof of citizenship, and requiring the Attorney General to investigate the citizenship of these individuals and report to the Secretary of State, the President of the Senate, and the Speaker of the House

---

[12] Arizona does not permit an individual to vote "unless such person's name appears as a qualified elector in both the general county register and in the precinct register or list of the precinct and election districts or proposed election districts in which such person resides[.]" A.R.S. § 16-122.

regarding the results of his investigation (Section 7); and

- requiring the Attorney General to prosecute any individuals his investigation uncovers who are not United States citizens (Section 7).

**E. The burdens imposed by the Proof of Citizenship Restriction on the right to vote are substantial.**

62. The Proof of Citizenship Restriction burdens Arizona voters' ability to vote by mail and in presidential elections in at least four different ways.

63. *First*, registered voters who properly registered to vote without providing proof of citizenship—either due to state requirements at the time they registered or because they submitted the Federal Form—may be prohibited from voting in presidential elections *without any notice or opportunity to challenge* the State's determination. H.B. 2492 § 5, 55th Leg., 2d Reg. Sess. (Ariz. 2022). This includes nearly 200,000 Arizonans who registered to vote before October 1, 1996,[13] and 31,000 Arizonans who registered using the Federal Form.[14]

64. Furthermore, those 31,000 Arizonans who registered to vote using the Federal Form would be prohibited from voting early by mail, again *without any notice or opportunity to challenge* the State's determination. H.B. 2492 § 5, 55th Leg., 2d Reg. Sess. (Ariz. 2022). As discussed above, Arizona has allowed voters to vote by mail for any reason since 1991. *See* A.R.S. § 16-541. To now suddenly strip these registered voters of their ability to vote by mail without any notice substantially burdens their fundamental right to vote.

65. It bears repeating that despite depriving these voters of their right to vote in presidential elections or early by mail, the statute does not include any procedural safeguards. There is no notice requirement. There is no opportunity for the voter to provide documentary proof of citizenship. The statute does not even outline a time frame during which this removal of rights should occur. This lack of process will result in registered

---

[13] *See* Laurie Roberts, *Republicans want HOW MANY Arizonans to prove they have a right to vote?*, Ariz. Republic (March 28, 2022, 9:12 AM), https://www.azcentral.com/story/opinion/op-ed/laurieroberts/2022/03/28/arizona-voters-may-soon-prove-right-vote-citizenship/7192260001/.

[14] *See* Fischer, *supra* n.6.

voters being left in the dark about whether and how they can vote.

66. *Second*, the State has once again added another wrinkle to what was already a confusing, bifurcated voter registration system that frustrates Arizonans' right to vote. This system has already resulted in allegations of disenfranchisement resulting in an ongoing consent decree, whose requirements seem potentially in conflict with the Proof of Citizenship Restriction. *See* Compl. ¶¶ 39, 77-88, *LULAC v. Reagan*, No. 2:17-cv-04102-DGC (Nov. 7, 2017), ECF No. 1; Consent Decree at 7-16. The law will likely undo any harm the consent decree has averted, again resulting in the disenfranchisement of eligible voters who cannot navigate Arizona's needlessly confusing, byzantine, and ever-changing voter registration system.

67. *Third*, the law will require hundreds of thousands of voters who never had to provide further documentation to do so if they wish to continue to vote in presidential elections or, for Federal Form voters, to continue voting early by mail for any election. For many voters who lack such documentation, the costs in time and effort to obtain it are substantial, erecting a barrier so substantial that it disenfranchises these voters. Other courts considering challenges to similar laws have found these types of burdens to constitute a substantial burden on the right to vote. *See, e.g.*, *Fish v. Schwab*, 957 F.3d 1105, 1131 (10th Cir. 2020) (explaining that "extensive testimony about individual voters like Mr. Fish and Ms. Bucci who lacked [proof of citizenship] or faced significant costs to obtain it" permitted "the district court [to] properly conclude here that the [citizenship documentation] requirement imposed a significant burden on the right to vote"), *cert. denied*, 141 S. Ct. 965 (2020); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016) ("It does not matter whether that is because they lack access to the requisite documentary proof or simply because the process of obtaining that proof is so onerous that they give up. The outcome is the same—the abridgment of the right to vote." (citation omitted)).

68. *Fourth*, the law subjects potential voters to investigation by the Attorney General based solely on a county recorder's inability to locate them in certain enumerated databases. Such inability could result from something as simple as a typographical or transcription error, and fear of wrongful investigation may chill otherwise eligible voters

from seeking to register to vote or exercising the franchise.

69. Taken together, this host of harms constitutes a substantial burden on the right to vote.

**F. The Proof of Citizenship Restriction serves no justifiable state interest.**

70. As with so many pernicious voting restrictions, proponents of the Proof of Citizenship Restriction justify it by invoking the boogeyman of voter fraud without any proof to support their claims.

71. During the Legislature's consideration of the Bill, no legislator identified a single instance of voter fraud or impropriety in Arizona related to mail-in early voting ballots that would precipitate the need for the changes at issue.

72. Instead, evidence-free assertions were offered such as that by Bill Sponsor Rep. Jake Hoffman, who stated that the Bill was needed because Arizona "cannot allow potentially tens of thousands of noncitizens to vote in our elections."[15] This unsupported fearmongering is plainly insufficient to justify the Proof of Citizenship Restriction's widespread burdens.

73. Meanwhile, the Legislature's own lawyers advised that the Proof of Citizenship Restriction violates federal law and invites litigation.[16] Indeed, Speaker Pro Tempore of the Arizona House Travis Grantham acknowledged that a motivation behind the law is to broadly challenge the constitutionality of the NVRA, stating that the law was important to "fight for local control of our elections" and that challenging related federal rulings was "a fight worth having."[17] But disagreement with and open defiance of federal

---

[15] *See* Katya Schwenk, *'Extreme' Arizona Elections Bill Inching Closer to Law*, Phoenix New Times (Mar. 30, 2022, 6:00 AM), https://www.phoenixnewtimes.com/news/extreme-arizona-elections-bills-inching-closer-to-law-13323436.

[16] *See* Trevor Potter, *This Arizona bill could keep you from voting early, by mail or for president*, AZ Central (Mar. 27, 2022, 6:00 AM), https://www.azcentral.com/story/opinion/op-ed/2022/03/27/arizona-bill-could-keep-you-voting-early-president/7158739001/; Howard Fischer, *GOP lawmakers seek to reopen legal voting issue*, Daily Independent (Mar. 26, 2022, 9:00 AM), https://www.yourvalley.net/stories/gop-lawmakers-seek-to-reopen-legal-voting-issue,293949.

[17] *See* Fischer, *supra* n.16.

law is also insufficient to justify the Proof of Citizenship Restriction's significant burdens on Arizonans' voting rights.

74. Other courts have rightfully found similar laws to be unconstitutional. For example, in 2011 Kansas adopted a law that required state and county election officials to reject voter registration applications unless the applicant submitted "satisfactory evidence of United States citizenship." *Fish*, 957 F.3d at 1111 (quoting Secure and Fair Elections ("SAFE") Act, ch. 56, § 8(l), 2011 Kan. Sess. Laws 795, 806, 809–11 (codified at Kan. Stat. Ann. § 25–2309(l))). The United States Court of Appeals for the Tenth Circuit ultimately held that the Kansas law violated the Fourteenth Amendment's Equal Protection Clause because it was an unconstitutional burden on the right to vote and that it was also preempted by Section 5 of the NVRA. *Id.* at 1121. The Court found particularly relevant the fact that the Kansas law impacted 31,089 applicants who were prevented from registering to vote distinguished this from other voting restrictions where the burden was less clear. *See id.* at 1129.

75. As noted above, the Proof of Citizenship Restriction imposes significant new restrictions and burdens on a minimum of approximately 200,000 Arizonans, an impact over six times greater than that which gave the Tenth Circuit such pause in *Fish*. As in *Fish*, there can be little doubt that the Proof of Citizenship Restriction imposes an unconstitutional burden on the right to vote.

## CLAIMS FOR RELIEF

## COUNT I

### Unjustifiable Burden on the Right to Vote
### U.S. Const. Amend. I, XIV, 42 U.S.C. § 1983
### (As to all Defendants)

76. Plaintiffs reallege and incorporate by reference paragraphs 1 through 75 as if fully set forth herein.

77. A court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the Plaintiffs seek to vindicate against the justifications put forward by the state for the burdens imposed by the rule. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v.*

*Celebrezze*, 460 U.S. 780, 789 (1983).

78. "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotations marks omitted).

79. The Proof of Citizenship Restriction imposes a disparate and unjustifiable burden on the right to vote. As detailed above, it strips voters of the right to vote in presidential elections or by mail without notice, adds further confusion to what was already a convoluted registration process that has led to disenfranchisement, imposes substantial new costs on hundreds of thousands of Arizonans to exercise the franchise, and exposes voters to the threat of baseless investigation by the Attorney General. Both individually and in combination these harms impose a significant—and in many cases severe—burden on the right to vote. The Proof of Citizenship Restriction also harms Plaintiffs because it disproportionately impacts their members and constituents, and will require Plaintiffs to divert money, personnel, time, and resources away from other programming in order to dedicate more resources toward efforts to ensure that voters can navigate the restrictions imposed by the Proof of Citizenship Restriction.

80. These burdens are not justified by any sufficient state interest.

## COUNT II

**Denial of Procedural Due Process**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983**
**(As to all Defendants)**

81. Plaintiffs reallege and reincorporate by reference paragraphs 1 through 75 as though fully set forth herein.

82. To determine whether a plaintiff has been denied procedural due process in violation of the Due Process Clause of the Fourteenth Amendment, a court first asks whether a constitutionally protected liberty interest is at stake. If so, the court determines whether the procedural protections provided are sufficient by applying the *Anderson-Burdick* test as described above. *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1195 (9th Cir. 2021) (holding that "the *Anderson/Burdick* approach is better suited to the context

of election laws than is the more general *Eldridge* test" (quoting *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 234 (5th Cir. 2020))).

83. The right to vote is a fundamental constitutional right. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry*, 376 U.S. at 17. Because Arizona allows all registered voters to exercise their fundamental right to vote early by mail, there is a constitutionally protected liberty interest involved in the process of casting a ballot by mail and in having that ballot counted. *See, e.g.*, *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp 3d 158, 227 (M.D.N.C. 2020) (holding that "North Carolina, having 'authorized the use of absentee ballots,' must afford appropriate due process protections to the use of the absentee ballots"); *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1338 (N.D. Ga. 2018) ("Courts around the country have recognized that '[w]hile it is true that absentee voting is a privilege and a convenience to voters, this does not grant the state the latitude to deprive citizens of due process with respect to the exercise of this privilege.'") (quoting *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990)); *Zessar v. Helander*, No. 05 C 1917, 2006 WL 642646, at *5 (N.D. Ill. Mar. 13, 2006) ("The right to vote by absentee ballot is not, in and of itself, a fundamental right. But once the State permits voters to vote absentee, it must afford appropriate due process protections, including notice and a hearing, before rejecting an absentee ballot."). As a result, Defendants may not deprive voters of the right to vote early by mail without providing adequate procedures.

84. Arizona's Proof of Citizenship Restriction will deprive hundreds of thousands of currently registered voters of their ability to vote by mail in future elections. It does so while giving no details about any notice these voters will be provided, or how or when they may cure this defect. This imposes a severe burden on their procedural due process rights. The Proof of Citizenship Restriction also harms Plaintiffs because it will deprive their members and constituents of the ability to vote by mail in future elections, and will require Plaintiffs to divert money, personnel, time, and resources away from other programming in order to dedicate more resources toward efforts to ensure that voters can navigate the restrictions imposed by the Proof of Citizenship Restriction.

85. As detailed above, there is no state interest which justifies stripping registered voters of the state-protected right to vote early by mail with no notice or opportunity to cure.

**COUNT III**

**Disparate Treatment in Violation of the Right to Equal Protection**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983**
**(As to all Defendants)**

86. Plaintiffs reallege and incorporate by reference paragraph 1 through 75 as if fully set forth herein.

87. The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

88. This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another"). Equal protection concerns regarding elections laws are properly evaluated under the *Anderson-Burdick* framework. *See, e.g.*, *Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011).

89. The Proof of Citizenship Restriction arbitrarily treats Arizona voters differently based solely on which voter registration form they happen to use. Those voters registering using the Federal Form without proof of citizenship will be entitled to vote in federal congressional elections, while the same voter presenting the same proof of eligibility but using a state form will have their registration rejected entirely.

90. The Proof of Citizenship Restriction also arbitrarily discriminates against Federal Form voters. Under H.B. 2492, eligible and registered voters placed on the Federal Only Voters List cannot utilize Arizona's early voting opportunities and cannot vote in presidential elections. Instead, they can exercise their right to vote only in-person on election day and can only cast a ballot for congressional offices. Similarly situated eligible

voters for federal elections are able to access Arizona's early voting opportunities and vote for all federal offices.

91. The Proof of Citizenship Restriction also harms Plaintiffs because it arbitrarily discriminates against its members and constituents, and will require Plaintiffs to divert money, personnel, time, and resources away from other programming in order to dedicate more resources toward efforts to ensure that voters can navigate the restrictions imposed by the Proof of Citizenship Restriction.

92. These burdens are not justified by any sufficient state interest.

**COUNT IV**

**National Voter Registration Act of 1993**
**52 U.S.C. §§ 20505, 20507, 20508, 20510**
**(As to Defendants Hobbs and the County Recorders)**

93. Plaintiffs reallege and incorporate by reference paragraphs 1 through 75 as if fully set forth herein.

94. The NVRA requires Arizona to "accept and use the mail voter registration application form prescribed by the [Election Assistance Commission] . . . for the registration of voters in elections for Federal office" if the Federal Form or any other "valid voter registration form" is timely received. 52 U.S.C. §§ 20505(a)(1), 20507(a)(1)(A)-(D), 20508(a), 21132. The Federal Form "may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant" and must include a statement that (1) specifies each eligibility requirement (including citizenship); (2) contains an attestation that the applicant meets each such requirement; and (3) requires the signature of the applicant, under penalty of perjury. *Id.* § 20508.

95. The NVRA also requires that Arizona "shall ensure that an[] eligible applicant is registered to vote in a federal election" if the Federal Form or any other "valid voter registration form" is timely received. *Id.* § 20507(a)(1)(A)-(D).

96. The Proof of Citizenship Restriction violates several sections of the NVRA. *First*, the NVRA provides that a state shall ensure that any eligible applicant is registered

to vote in an election if they submit a valid voter registration form "not later than the lesser of 30 days, or the period provided by State law, before the date of the election." *Id.* § 20507 (a)(1)(B). By not placing voters who complete a Federal Form on the list of qualified electors under A.R.S. § 16-122 within this timeframe, the Proof of Citizenship Restriction violates the NVRA.

97. *Second*, by changing the definition of "qualified elector" such that voters who complete a Federal Form would not appear on the list of qualified electors detailed by A.R.S. § 16-122 for presidential elections, Arizona has added an additional qualification to the Federal Form for presidential elections. "[A] state-imposed requirement of evidence of citizenship not required by the Federal Form is 'inconsistent with' the NVRA's mandate that States 'accept and use' the Federal Form." *Inter Tribal Council of Ariz.*, 570 U.S. at 15 (citation omitted). H.B. 2492 provides that any voter who completes (or has completed) a Federal Form but does (or did) not provide proof of citizenship cannot appear on the list of "qualified electors" for a presidential election under A.R.S. § 16-122. By failing to fully "accept and use" the Federal Form, H.B. 2492 violates 52 U.S.C. § 20505(a)(1), 52 U.S.C. § 20508(b), and 52 U.S.C. § 20507(a)(1).

98. Section 20510(b) of the NVRA provides a right of action to persons aggrieved by violations of the NVRA to bring a civil action for declaratory or injunctive relief with respect to the violations if they provide the appropriate written notice and the violation is not remedied. 52 U.S.C. § 20510(b). The Proof of Citizenship Restriction will result in Plaintiffs' members and constituents being denied their statutory protections under the NVRA and, as detailed above, lead to their disenfranchisement. The Proof of Citizenship Restriction will also require Plaintiffs to divert money, personnel, time, and resources away from other programming in order to dedicate more resources toward efforts to ensure that voters can navigate the restrictions imposed by the Proof of Citizenship Restriction.

99. Plaintiffs provided the Secretary with written notice of these violations of the NVRA on April 7, 2022. Ex. A; *see id.* § 20510(b)(1). Because the Secretary failed to remedy the violation within 90 days after receipt of Plaintiffs' notice, Plaintiffs bring this action. *See id.* § 20510(b)(2).

**COUNT V**

**Materiality Provision of the Civil Rights Act of 1964**
**52 U.S.C. § 10101(a)(2)(B)**
**(As to all Defendants)**

100. Plaintiffs reallege and incorporate by reference paragraphs 1 through 75 as if fully set forth herein.

101. The Materiality Provision of the Civil Rights Act of 1964 prohibits individuals "acting under color of law" from denying anyone the right "to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). Under Arizona law, individuals who meet the following qualifications are eligible to vote under State law: 1) United States citizen; 2) Arizona resident and resident of their registered county for 29 days before an election; 3) 18 or older before the next general election; 4) able to write their name and make a mark on a ballot, unless prevented to by a physical disability; 5) not legally incapacitated; and 6) not convicted of a treason or felony, unless restored to civil rights. *See* Ariz. Const. art VII, § 2, cl. A; A.R.S. § 16-101.

102. H.B. 2492 violates the Materiality Provision in several ways. *First*, it bars election officials from registering new voters who have already provided proof of citizenship if they fail to check a box on the State or Federal Form indicating that they are citizens. Whether a prospective voter, through error or omission, fails to check a box on a voter registration form is not material to Arizona determining whether they are qualified to vote under State law. *See* Ariz. Const. art VII, § 2, cl. A; A.R.S. § 16-101.

103. *Second*, H.B. 2492 bars election officials from registering new voters if their State Form registration application does not include their birthplace. Whether a prospective voter, through error or omission, fails to list their birthplace is not material to Arizona determining whether they are qualified to vote under State law. *See* Ariz. Const. art VII, § 2, cl. A; A.R.S. § 16-101.

104. *Third*, H.B. 2492 bars election officials from allowing prospective voters

who are registering using the Federal Form to vote in presidential elections or early by mail in any election unless they submit proof of citizenship. Whether a prospective voter who has complied with the Federal Form's citizenship attestation requirement submits proof of citizenship is not material to Arizona determining whether they are qualified to vote under State law in presidential elections or early by mail in any election. *See* Ariz. Const. art VII, § 2, cl. A; A.R.S. § 16-101.

105. *Fourth*, H.B. 2492 bars election officials from allowing already registered voters who registered using the Federal Form to vote in presidential elections or early by mail in any election unless they submit proof of citizenship. Whether a current voter who successfully registered to vote using the Federal Form submits proof of citizenship is not material to Arizona determining whether they are qualified to vote under State law in presidential elections or early by mail in any election. *See* Ariz. Const. art VII, § 2, cl. A; A.R.S. § 16-101.

106. The Proof of Citizenship Restriction will result in Plaintiffs' members and constituents being denied their statutory protections under the Civil Rights Act of 1964 and, as detailed above, lead to their disenfranchisement. The Proof of Citizenship Restriction will also require Plaintiffs to divert money, personnel, time, and resources away from other programming in order to dedicate more resources toward efforts to ensure that voters can navigate the restrictions imposed by the Proof of Citizenship Restriction.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court enter the following judgment:

A. Declare that the Proof of Citizenship Restriction (H.B. 2492) violates the First and Fourteenth Amendments, the NVRA, and the Materiality Provision of the Civil Rights Act of 1964;

B. Enjoin Defendants, along with their respective agents, officers, employees, and successors from enforcing the Proof of Citizenship Restriction;

C. Award Plaintiff its costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law;

D. Grant such other and further relief as the Court deems just and proper.

Dated: July 18, 2022

Respectfully Submitted,

*/s/ Daniel A. Arellano*
Roy Herrera (Bar No. 032901)
Daniel A. Arellano (Bar. No. 032304)
Jillian L. Andrews (Bar No. 034611)
**HERRERA ARELLANO LLP**
530 East McDowell Road
Suite 107-150
Phoenix, Arizona 85004-1500
Telephone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com
jillian@ha-firm.com

Marc E. Elias*
Elisabeth C. Frost*
John M. Geise*
Daniela Lorenzo*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, DC 20002
Phone: (202) 968-4513
Facsimile: (202) 968-4498
melias@elias.law
efrost@elias.law
jgeise@elias.law
dlorenzo@elias.law

*Attorneys for Plaintiffs*
** Admitted Pro Hac Vice*