KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

GARY M. RESTAINO
United States Attorney
District of Arizona

T. CHRISTIAN HERREN, JR. (AL Bar No. ASB6671R63T)
RICHARD A. DELLHEIM (NY Bar No. 2564177)
EMILY R. BRAILEY (DC Bar No. 1684650)
JENNIFER J. YUN (DC Bar No. 1600953)
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4CON – Room 8.1815
950 Pennsylvania Avenue, NW
Washington, DC 20530
Tel.: (202) 353-5724 / Fax: (202) 307-3961
Email: Chris.Herren@usdoj.gov
Richard.Dellheim@usdoj.gov
Emily.Brailey@usdoj.gov
Jennifer.Yun@usdoj.gov

*Attorneys for the United States*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mi Familia Vota, et. al.,<br>Plaintiffs,<br><br>v.<br><br>Adrian Fontes, et. al.,<br>Defendants. | No. 2:22-cv-00509-SRB (Lead Case)<br>No. 2:22-cv-01124-SRB (Consolidated)<br><br>United States' Reply in Support of Its Partial Motion for Summary Judgment (ECF No. 391) |
| Living United for Change in Arizona, et al.,<br>Plaintiffs,<br><br>v.<br><br>Adrian Fontes,<br>Defendant, | |

and

State of Arizona, et al.,
Defendants.

---

Poder Latinx, et al.,
Plaintiffs,

v.

Adrian Fontes, et al.
Defendants.

---

United States of America,
Plaintiff,

v.

State of Arizona, et al.,
Defendants.

---

Democratic National Committee, et al.
Plaintiffs,

v.

Adrian Fontes, et al.,
Defendants,

and

Republican National Committee,
Defendant-Intervenor.

---

Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition,
Plaintiff,

v.

Adrian Fontes, et al.,
Defendants.

Promise Arizona, et al.,
Plaintiffs,

v.

Adrian Fontes, et al.,
Defendants.

Tohono O'odham Nation, et al.,
Plaintiffs,

v.

Kris Mayes, et al.,
Defendants.

**TABLE OF CONTENTS**

I. The NVRA Preempts HB 2492's Documentary Proof of Citizenship Requirements for Federal-Only Voters. .......... 1

II. This Court Should Deny or Defer Consideration of the Defendants' Argument that the NVRA Does Not Preempt HB 2492's Mail Voting Restrictions for Federal-Only Voters. .......... 7

CONCLUSION .......... 9

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. Inter-Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) (*ITCA*).................. 7, 8, 9

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................................ 6

*Burroughs v. United States*, 290 U.S. 534 (1934)..................................................... 5, 6

*Chiafalo v. Washington*, 140 S. Ct. 2316 (2020) .................................................. 3, 5, 7

*Cook v. Gralike*, 531 U.S. 510 (2001)........................................................................ 4

*McPherson v. Blacker*, 146 U.S. 1 (1892)................................................................ 3, 4

*Merit Mgmt. Grp. v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018) .................................... 4

*Oregon v. Mitchell*, 400 U.S. 112 (1970)..................................................................... 6

*Princeton Univ. v. Schmid*, 455 U.S. 100 (1982) ........................................................... 5

*Ray v. Blair*, 343 U.S. 214 (1952)................................................................................ 3

*The Pocket Veto Case*, 279 U.S. 655 (1929) ................................................................ 7

*United States v. Classic*, 313 U.S. 299 (1941) ........................................................ 4, 5

*Voting Rights Coalition v. Wilson*, 60 F.3d 1411 (9th Cir. 1995)...................................... 6

**Statutes**

52 U.S.C. § 10101(a)(2)(B)............................................................................................ 1

52 U.S.C. § 20505(a)(1) ............................................................................................ 1, 2, 9

52 U.S.C. § 20501(a)(3) ................................................................................................ 2

Ariz. Rev. Stat. § 16-127(A)(2)....................................................................................... 8

Ariz. Rev. Stat. § 16-166 ........ 8
Ariz. Rev. Stat. § 16-212 ........ 2
Ariz. Rev. Stat. § 16-341 ........ 2
Ariz. Rev. Stat. § 16-344 ........ 2
U.S. Const. art. I, § 4, cl. 1 ........ 4
U.S. Const. art. II, § 1, cl. 2 ........ 2
U.S. Const. art. II, § 1, cl. 4 ........ 2

The United States respectfully submits this reply brief in support of its motion for partial summary judgment on the United States' claim arising under Section 6 of the National Voter Registration Act (NVRA), 52 U.S.C. § 20505(a)(1). *See* ECF No. 391.[1]

**I. The NVRA Preempts HB 2492's Documentary Proof of Citizenship Requirements for Federal-Only Voters.**

The Arizona Attorney General and the State of Arizona ("State Defendants") agree with the United States that Congress may regulate all federal elections, and that Section 6 of the NVRA preempts HB 2492's documentary proof of citizenship (DPOC) requirement as a matter of law. *See* State Def. Resp. at 10, ECF No. 436. Defendant-Intervenors argue that the NVRA cannot regulate presidential elections because only states may control the manner in which presidential electors are chosen under the Electors Clauses of the Constitution. *See* Def. Int. Resp. at 1–6, ECF No. 442. But as Supreme Court and Ninth Circuit precedent indicates, Congress has power to regulate presidential elections, and the NVRA therefore applies to presidential elections. *See* U.S. Mem. Supp. Summ. J. at 7–8, ECF No. 391-1 (collecting cases); U.S. Resp. Mot. Dismiss at 7–8, ECF No. 152 (same); *see also* Order on Mots. to Dismiss at 28–29, ECF No. 304. Courts have long recognized this authority to regulate presidential elections as deriving

---

[1] The United States responds only to the State Defendants' and Defendant Intervenors' briefs in opposition to its motion for partial summary judgment on the NVRA claim. *See* Order at 2, ECF No. 362 (setting July 19, 2023, as the deadline for "any plaintiff to file replies in support of their dispositive motions"). Accordingly, the United States will not address in this pleading its claim under the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B), as the United States did not seek summary judgment as to that claim.

from the Elections Clause, the Necessary and Proper Clause, and the Reconstruction Amendments.[2] *See* U.S. Mem. at 7, 11–12; U.S. Resp. to Mot. Dismiss at 9–10.

Defendant-Intervenors posit that a state's authority to appoint electors for President "in such Manner as the Legislature thereof may direct" forecloses Congress's power to regulate presidential elections. U.S. Const. art. II, § 1, cl. 2; *see* Def. Int. Resp. at 1–3. But reading the Electors Clauses to give states this sweeping authority to regulate individual voters participating in federal elections has no basis in text, precedent, or history. The Electors Clauses state: "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress," and "Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States." U.S. Const. art. II, § 1, cl. 2 & 4. Arizona decided the manner of appointing electors when the legislature enacted statutes requiring political parties to choose their own slates. *See* Ariz. Rev. Stat. §§ 16-341, 16-344 (outlining the process for appointing Arizona's 11 electors). The popular vote in Arizona dictates how those electors cast their vote on the date prescribed by Congress. *See id.* § 16-212 (outlining the process of Arizona's

---

[2] Contrary to Defendant-Intervenors' characterization, Def. Int. Resp. at 5, Congress made clear in the NVRA's text, in addition to its legislative history, that the NVRA is remedial legislation to combat "discriminatory and unfair registration laws" that "disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3); *see also* U.S. Mem. at 11–12 (citing legislative history and court cases).

presidential electors casting their electoral college votes). Nothing in the text of the Electors Clauses indicates that the manner of *appointing presidential electors* subsumes Congress's authority to determine how federal *elections* are conducted. *See* U.S. Mem. at 12–13.

None of the cases Defendant-Intervenors cite supports the contention that regulating voter registration for presidential elections amounts to regulating the manner of appointing presidential electors. The Electors Clauses cases cited by Defendant-Intervenors simply affirm what the Clauses plainly say: that states are empowered to choose a procedural method of appointing presidential electors and to regulate the electors themselves. For example, *McPherson v. Blacker*, 146 U.S. 1 (1892), concerned state legislation to appoint presidential electors by an election based on congressional districts instead of by an at-large election. And the Supreme Court in *Ray v. Blair*, 343 U.S. 214 (1952), held that states may require electors to vote for the presidential candidate who won the state's popular vote, and, in *Chiafalo v. Washington*, 140 S. Ct. 2316 (2020), that states may sanction those electors if they fail to do so. In that context, the Supreme Court explained that states have the "power to condition [an elector's] appointment—that is, to say what the elector must do for the appointment to take effect." *Chiafalo*, 140 S. Ct. at 2324. This explanation of the states' power to condition electors' appointments has no bearing on Congress's authority to regulate individual voters in federal elections.

Read together, these cases establish that electors perform a non-discretionary role in presidential elections, *Chiafalo*, 140 S. Ct. at 2326–27, and that the "manner" in which

they are appointed governs the mechanics of appointment, given the electors' duty to express the will of the people, *see McPherson*, 146 U.S. at 28–29 (listing various "modes" of choosing electors). No precedent interpreting the Electors Clauses supports extending this state authority to voter registration, even if the "manner" of appointing electors is by popular vote. Reading these cases to mean that states have the exclusive power to regulate presidential *elections*—and that congressional authority over presidential elections is limited to setting the time for choosing presidential electors—would result in a novel and baseless expansion of the Electors Clauses' scope.

Defendant-Intervenors then cite cases that interpret the word "manner" in the Elections Clause, U.S. Const. art. I, § 4, cl. 1, to argue that voter registration for presidential elections falls within states' power to regulate the manner of appointing presidential electors under the Electors Clauses. Def. Int. Resp. at 3–4. But courts "look to both 'the language itself [and] the specific context in which that language is used'" to elucidate its meaning. *Merit Mgmt. Grp. v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018) (quoting *Robinson v. Shell Oil Co*., 519 U.S. 337, 341 (1997)). As such, this Court should reject Defendant-Intervenors' invitation to disregard the words "appoint . . . electors" in interpreting the word "manner" in the Electors Clauses.

For that reason, Defendant-Intervenors' reliance on *Cook v. Gralike*, 531 U.S. 510 (2001), and *United States v. Classic*, 313 U.S. 299 (1941) is misplaced: the context in which these two cases interpreted the word "manner" demonstrates why they are inapt for interpreting the Electors Clauses. In *Cook*, the Supreme Court explained that "manner of *elections*"—as used in the Elections Clause—included matters such as voter registration.

*Id*. at 523–24 (emphasis added). The Court had no occasion to define the term "manner" for all constitutional provisions, let alone to suggest that the "manner" of appointing presidential electors encompassed voter registration. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982) (the Supreme Court "do[es] not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [the Court]"). And in *United States v. Classic*, the Supreme Court held that Congress may regulate primary elections for congressional candidates because a primary election is a "necessary step[]" for congressional elections. *Id.* at 320. Nothing in that case supports Defendant-Intervenors' claim, *see* Def. Int. Resp. at 3, that *voter registration* is a "necessary step" for *appointing* presidential *electors* and therefore is governed by the Electors Clauses. Defendant-Intervenors' attempt to blur the distinctions between the Elections Clause and the Electors Clauses should be rejected.

Another set of cases cited by Defendant-Intervenors' address federal statutes that regulate presidential elections. Congress's "regular course of practice" reflected in those cases "settle[s] the meaning of disputed or indeterminate terms & phrases." *Chiafalo*, 140 S. Ct. at 2326 (internal quotation marks omitted). Time and time again, courts have held that Congress has authority to regulate presidential elections.

In *Burroughs v. United States*, 290 U.S. 534 (1934), the Supreme Court found that a federal law seeking to protect the integrity of presidential elections "in no sense invades any exclusive state power" to "appoint electors or the manner in which their appointment shall be made." *Id.* at 544–45. In other words, *Burroughs* did not find that a "statute that interfered with the 'exclusive state power' over presidential elections would be

unconstitutional," Def. Int. Resp. at 5. It held just the opposite: states did *not* have any "exclusive" power over presidential elections because Congress had constitutional authority to pass legislation that "seeks to preserve the purity of presidential and vice presidential elections." *Burroughs*, 290 U.S. at 544. Moreover, the fact that *Burroughs* did not determine whether the Electors Clauses could be a source of congressional authority, Def. Int. Resp. at 4–5, is irrelevant. That is because the question here is whether Congress possesses authority to regulate presidential elections—the precise question that *Burroughs* answered in the affirmative. *Burroughs*, 290 U.S. at 544–45.[3]

In *Oregon v. Mitchell*, 400 U.S. 112 (1970), the Supreme Court held that Congress may abolish state residency requirements in presidential elections. *Id.* at 118. Defendant-Intervenors suggest that because the Justices did not agree on the exact source of that authority, that holding is hollow. Not so. The Court's holding, especially in the context of numerous other cases establishing congressional authority to regulate all federal elections, applies squarely here. *See* U.S. Mem. at 7–8; U.S. Resp. Mot. Dismiss at 6–9. Similarly, the Ninth Circuit found in *Voting Rights Coalition v. Wilson*, 60 F.3d 1411 (9th Cir. 1995), *cert. denied*, 516 U.S. 1093 (1996), that "the broad power given to Congress over congressional elections has been extended to presidential elections." *Id.* at

---

[3] Nor did the Supreme Court forty years later "clarif[y]" in *Buckley v. Valeo*, 424 U.S. 1 (1976), that the statute at issue in *Burroughs* was passed under the General Welfare Clause. *See* Def. Int. Resp. at 4. Rather, *Buckley* simply cited *Burroughs* for the principle that "Congress has power to regulate Presidential elections and primaries" to counter the argument that the General Welfare clause somehow restricted that power. *Buckley*, 424 U.S. at 90.

1414. That affirmative interpretation of congressional authority is binding even if the Ninth Circuit did not consider the novel arguments Defendant-Intervenors float here to override congressional authority.

"Long settled and established practice" of congressional regulation of federal elections must be given "a consideration of great weight in a proper interpretation of constitutional provisions." *See The Pocket Veto Case*, 279 U.S. 655, 689 (1929); *see also Chiafalo*, 140 S. Ct. at 2326 (paraphrasing the same). Because Defendant-Intervenors' unbounded reading of the Electors Clauses has neither precedent nor history on its side, this Court should hold that the NVRA applies to presidential elections, and that Section 6 of the NVRA preempts HB 2492's DPOC requirement.

## II. This Court Should Deny or Defer Consideration of the Defendants' Argument that the NVRA Does Not Preempt HB 2492's Mail Voting Restrictions for Federal-Only Voters.

The Court should deny or defer ruling on Defendants' request for summary judgment on their argument that the NVRA does not preempt HB 2492's mail voting restrictions. State Defendants and Defendant-Intervenors characterize the question at hand as whether the NVRA may apply to absentee voting or mail voting requirements. *See* State Def. Resp. at 10; Def. Int. Resp. at 6–7. But the dispute concerns whether the DPOC requirement in HB 2492 operates as a registration requirement that violates the NVRA, not whether the NVRA applies to any given mail voting requirement in the abstract. The DPOC requirement's history and context indicate that it *does* operate as a registration requirement, and imposing such an additional registration requirement violates Section 6 of the NVRA. *See Arizona v. Inter-Tribal Council of Ariz., Inc.*, 570

U.S. 1, 15 (2013) (*ITCA*) (holding that "a state-imposed requirement of evidence of citizenship not required by the Federal Form is 'inconsistent with' the NVRA's mandate that States 'accept and use' the Federal Form").

Providing DPOC has been a registration requirement for Arizona's state form users since 2004. *See ITCA*, 570 U.S. at 6–7 (tracing the history of the DPOC requirement in Arizona). HB 2492 sought to extend that requirement to federal form users, despite the Supreme Court's holding in *ITCA*. *See* U.S. Compl. ¶¶ 45–46 (summarizing objections to HB 2492's DPOC requirement in the legislature). As the State Defendants point out, Chapter 1 of Article 16 of the Arizona Revised Statutes governs registration requirements, and Chapter 4 of Article 16 contains laws about voting by mail. *See* State Def. Resp. at 11–12. HB 2492's "mail voting" requirement was codified in Chapter 1, not Chapter 4, right next to the requirement that federal-form registrants must provide DPOC to vote in presidential elections. *See* Ariz. Rev. Stat. § 16-127(A)(2) ("A person who has not provided satisfactory evidence of citizenship pursuant to § 16-166 and who is eligible to vote only for federal offices is not eligible to receive an early ballot by mail."). The same statute also references Section 16-166, which specifies DPOC as a registration requirement. *See id.*; Ariz. Rev. Stat. § 16-166 (enumerating steps for "verification of registration").

In practice, HB 2492's DPOC requirement creates a two-tier registration system based on whether voters have provided DPOC: those who have provided DPOC are registered to vote for all federal elections and for voting by mail, while those who have not provided DPOC may not vote in presidential elections or vote by mail. Such a two-

tier registration system nullifies Section 6 of the NVRA, which requires the State to "accept and use" the form to register voters for all federal elections. *See ITCA*, 570 U.S. at 10 (interpreting the word "accept" in Section 6 of the NVRA as "its object is to be accepted *as sufficient* for the requirement it is meant to satisfy," rather than as "to receive the form willingly" (emphasis in original)); 52 U.S.C. § 20505(a)(1). Calling the DPOC requirement a mail voting requirement does not relieve Arizona of its obligation to accept and use the federal form under the NVRA. This Court should therefore reject Arizona's attempt to circumvent the holding in *ITCA* and Section 6 of the NVRA.[4]

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant its Motion for Partial Summary Judgment on its NVRA claim. The Court should deny or defer consideration of the State Defendants' partial summary judgment motion as to the NVRA's application to HB 2492's DPOC requirement for mail voting.

---

[4] In the alternative, this Court should defer consideration of Defendants' motions for summary judgment on the mail voting issue. Deciding that Section 6 of the NVRA does not apply to Arizona's mail voting restrictions at this time would not narrow issues for trial. Even if this Court were to agree with Defendants on this point, whether Arizona may lawfully require DPOC to vote by mail would remain unresolved, because summary judgment on the United States' Materiality Provision claim is premature at this time. *See* U.S. Mem. at 16–25 (outlining the United States' opposition to summary judgment on the Materiality Provision claim).

Date: July 19, 2023

Respectfully submitted,

GARY M. RESTAINO
United States Attorney
District of Arizona

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*/s/ Jennifer J. Yun*
T. CHRISTIAN HERREN, JR.
RICHARD A. DELLHEIM
EMILY R. BRAILEY
JENNIFER J. YUN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4CON – Room 8.1815
950 Pennsylvania Avenue, NW
Washington, DC 20530

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ Jennifer J. Yun*
Jennifer J. Yun
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(202) 353-5724
jennifer.yun@usdoj.gov